UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| TINA FRANK, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>ALLSTATE INSURANCE COMPANY, a Delaware company,<br><br>*Defendant.* | Case No. 1:26-cv-01205<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Tina Frank ("Plaintiff Frank" or "Frank") brings this Class Action Complaint and Demand for Jury Trial against Defendant Allstate Insurance Company ("Defendant" or "Allstate") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by (i) placing calls and sending text messages to consumers after they have expressly requested that Defendant stop calling and/or text messaging them. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Frank, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Frank is a resident of Olmsted Township, Cuyahoga County, Ohio.

2. Defendant Allstate is a Delaware registered company located in Northbrook, Illinois. Defendant Allstate conducts business throughout the US.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because Defendant conducts substantial business in this District, including marketing and selling insurance products to Ohio consumers. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including Plaintiff's receipt of the text messages at issue while residing in this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 3.9 billion robocalls were placed in January 2026 alone, at a rate of 125.2 million per day. www.robocallindex.com (last visited March 1, 2026).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. Defendant Allstate provides insurance to consumers throughout the US.[3]

14. Defendant Allstate sells insurance to consumers through its own corporate-run call centers and insurance agents.

15. Defendant Allstate knowingly places calls and sends text messages to consumers, including individuals with new or reassigned cell phone numbers, without obtaining their consent, as experienced by Plaintiff.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.allstate.com/

16. The Federal Communications Commission ("FCC") has created and maintains the Reassigned Numbers Database (RND) to help callers avoid sending unwanted communications to telephone numbers that have been reassigned from a prior subscriber to a new subscriber.

17. The FCC requires that entities engaged in telephone solicitations take reasonable steps to avoid contacting reassigned numbers.[4]

18. The FCC has explicitly stated that failing to use the RND can result in liability under the TCPA when marketing messages are sent to individuals who did not consent and who acquired their number after it was reassigned.[5]

19. Despite the existence of the RND and the regulatory duty to avoid contacting reassigned numbers, Defendant Allstate failed to use the database or take other reasonable steps to confirm that the numbers it called and messaged were still associated with the original consenting party, as evidenced by its calling and texting of Plaintiff Frank, who had acquired her number and had never consented to receive calls and/or text messages from the Defendant.

20. To make matters worse, Allstate fails to maintain a sufficient opt-out system, causing consumers to receive calls and text messages after informing the Defendant to stop calling and/or texting, as will be seen through Plaintiff's experience.

21. Consumers have posted multiple complaints directly to Allstate through its Better Business Bureau page about unsolicited calls and texts that were received despite requests for those calls and texts to stop, including:

---

[4] See Advanced Methods to Target and Eliminate Unlawful Robocalls, Second Report and Order, 33 FCC Rcd. 12024, 12036–39, ¶¶ 31–39 (2018).
[5] 47 C.F.R. § 64.1200(l)

**Initial Complaint**

**Type:** Sales and Advertisin

**Date:** 01/21/2026

**Status:** Unresolved

I keep getting phone calls from Allstate insurance. I've told them repeatedly not to call me and to remove me from the call list. At this point it feels like harassment. What can be done about this practice? [6]

**Initial Complaint**

**Type:** Sales and Advertising

**Date:** 01/15/2026

**Status:** Unresolved

I continue to receive unsolicited phone calls from someone who represents themselves as Allstate Insurance. This began on September 30, 2025, and I contacted Allstate to report and stop the calls since I am on the Federal and Florida State Do Not Call list. I have been called from the following numbers, [redacted]5, [redacted] and then today, [redacted]. I have asked Allstate, each and every time to cease and desist from marketing me. Yet I continue to receive calls. I have asked Allstate to confirm they are following the law pertaining to Do No Call and they do not respond. I have even asked for the Florida agents license number from those who are calling and they simply hang up. I want this marketing to end and end now. [7]

**Initial Complaint**

**Type:** Sales and Advertisir

**Date:** 01/06/2026

**Status:** Answered

Constant calls from different numbers for Allstate insurance. You can never get through to the numbers they call from. [redacted] last number. Have told them several times to stop calling. [8]

**Initial Complaint**

**Type:** Sales and Advertisin

**Date:** 12/15/2025

**Status:** Answered

I keep on getting calls from Allstate after asking them to stop calling me. I'm on the do not call list and I just want them to stop calling me, I'm not interested in doing business with them. [9]

---

[6] https://www.bbb.org/us/il/northbrook/profile/insurance-companies/allstate-insurance-0654-12014144/complaints

[7] Id.

[8] Id.

[9] Id.

**Initial Complaint**

**Date:** 11/19/2025

**Type:** Sales and Advertisir

**Status:** Answered

Problem calling me when asked to refrain from SOLITICITION. ON THE [redacted] and not to be called again. [10]

22. In addition to the above, Allstate agents have posted complaints about the leads they have been directed to call, including:

★☆☆☆☆ October 5, 2024

**Bad management, telemarketing, *boring* job**

**Insurance Agent** Eureka, CA

Manager wasn't around babysat by people he hired on computer to watch and critique you making phone calls all day. It's not for everyone if you don't like calling random strangers all day that never asked you to. It's a job for sure and money potential is somewhat there. The job is completely monotonous and incredibly boring. You're under a microscope all day too being in a group zoom call of 20-30 other agents, also a "coach" that will critique everything you do and micro manage every word you say. [11]

★☆☆☆☆ April 19, 2022

**Worst job ever**

**Allstate Insurance Agent** Plano, TX

Allstate insurance is not a good company to work for if you are interested in selling policies on the daily basis. The leads that come in are useless. The base pay is horribly low. There's not an in office trainer to teach you or answer questions, you have to wait until the agency owner or customer service representative is available. The job is boring. The environment is boring. Job does not feel productive. [12]

23. In response to these calls and text messages, Plaintiff Frank brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF FRANK'S ALLEGATIONS

24. Plaintiff Frank is the owner of and pays for the cell phone number ending in 4348.

---

[10] Id.

[11] https://www.indeed.com/cmp/Allstate-Insurance/reviews?fjobtitle=Insurance+Agent&ftext=Boring

[12] Id.

25. Plaintiff Frank acquired her cell phone number in September of 2025.

26. Plaintiff Frank acquired her cell phone number for her own use and for use by her 14-year-old daughter.

27. Plaintiff Frank uses the cell phone number for residential purposes only, which includes speaking to family and friends, and scheduling personal appointments.

28. Plaintiff Frank has never used her cell phone number for business purposes.

29. Between September 18, 2025 and September 22, 2025, Plaintiff Frank received a series of solicitation text messages to her cell phone from 615-488-9799:






30. When 615-488-9799 is dialed, the employees answer the call identifying that they are in the corporate Allstate call center.[13]

31. As shown in the screenshots above, the text messages are directed to Nicholas. Plaintiff does not know who Nicholas is, but she believes that may be the previous owner of her cell phone number.

32. On September 22, 2025 at 4:32 PM, Plaintiff texted "Im not a nicholas" to 615-488-9799.

33. Plaintiff Frank received an immediate response confirming that her number was unsubscribed:




34. This screenshot shows that Defendant Allstate recognized "Im not a nicholas" as a stop request. The response states that Plaintiff was unsubscribed from the texting campaign, which should have stopped all communications to Plaintiff's cell phone number.

35. As a result of the above stop request, all of the subsequent calls and text messages that Plaintiff received from Defendant Allstate were violations of the TCPA.

36. Despite that this stop request that was acknowledged by Defendant Allstate, Plaintiff Frank continued to receive solicitation calls from the Defendant.

---

[13] Based on an investigation conducted by Plaintiff's attorneys

37. On November 17, 2025, Plaintiff Frank received an unsolicited call to her cell phone from 567-396-1436.

38. This call was not answered, but Plaintiff Frank called 567-396-1436 back on November 17, 2025 and confirmed that the call was from Allstate calling to ask Plaintiff about whether she was interested in purchasing insurance.

39. On January 15, 2026 and again on February 9, 2026 at 4:23 PM, Plaintiff Frank received additional calls from 567-396-1436 to her cell phone.

40. These calls were not answered.

41. Later on February 9, 2026, Plaintiff Frank received another unsolicited call to her cell phone from 567-396-1436.

42. When Plaintiff Frank answered this call, an employee said that they were calling from Allstate to provide a quote for auto insurance.

43. Plaintiff Frank told this employee that they were calling the wrong number and ended the call.

44. On February 12, 2026, Plaintiff Frank received another unsolicited call to her cell phone from 567-396-1436.

45. This call was not answered.

46. Following Plaintiff Frank's September 22, 2025 stop request, Plaintiff Frank received at least five telephone calls from or on behalf of Defendant Allstate within a 12-month period: on November 17, 2025, on January 15, 2026, twice on February 9, 2026, and on February 12, 2026. Plaintiff Frank therefore received more than one telephone call by or on behalf of Defendant Allstate within a 12-month period after requesting that Defendant's communications stop, independent of and in addition to the text messages she received.

47. On February 25, 2026 at 1:39 PM, Plaintiff Frank received another unsolicited text message to her cell phone, this time from shortcode 434637:




48. Shortcode 434637 is owned/operated by Allstate.[14]

49. On March 4, 2026 at 11:15 AM, Plaintiff Frank received another unsolicited text message to her cell phone, this time from shortcode 25788 that is advertising the Allstate app and a program named Drivewise:




50. On March 17, 2026 at 9:27 AM, Plaintiff Frank received another unsolicited text message to her cell phone, this time from 844-542-1468 regarding a home inspection:

[14] https://www.textingworld.com/short-code/usa/434637.html




51. The text message that is shown above is directed to Annette.

52. Plaintiff Frank does not know who Annette is and does not identify using the name Annette.

53. Plaintiff Frank never provided her cell phone number to Defendant Allstate or any of its agents.

54. The unauthorized solicitation calls and text messages that Plaintiff received have harmed Plaintiff in the form of annoyance, nuisance, invasion of privacy, disruption of her phone line, and interference with the use and enjoyment of her phone.

55. Seeking redress for these injuries, Plaintiff Frank, on behalf of herself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

56. Plaintiff Frank brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Internal Do Not Call Class:** All persons in the United States who, within four years prior to the filing of this action through the date of class certification, received (1) more than one telephone call and/or text message from Defendant Allstate, (2) within any 12-month period, (3) to solicit the sale or purchase of auto insurance, (4) including at least one call or text message after the person requested that Defendant stop calling and/or texting them.

57. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Frank anticipates the need to amend the Class definitions following appropriate discovery.

58. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

59. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant Allstate placed at least one call and/or text message to Plaintiff and other consumers after being told to stop calling/texting;

(b) whether the calls and text messages constitute a violation of the TCPA;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

60. **Adequate Representation**: Plaintiff Frank will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Frank has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Frank and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Frank nor her counsel have any interest adverse to the Class.

61. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Frank. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Frank and the Internal Do Not Call Class)**

62. Plaintiff repeats and realleges paragraphs 1-61 of this Complaint and incorporates them by reference herein.

63. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf

> the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

64. Defendant placed calls and text messages to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/texts.

65. Under 47 C.F.R. § 64.1200(d)(3), Defendant was required to record Plaintiff Frank's request, place her number on its do-not-call list at the time the request was made, and honor the request within a reasonable time. Defendant placed telemarketing calls to Plaintiff Frank beginning November 17, 2025 — approximately eight weeks after her September 22, 2025 request — and continuing through February 2026, demonstrating that Defendant failed to record the request, failed to place her number on its do-not-call list, and/or failed to honor her request within the time the regulation allows.

66. Under 47 C.F.R. § 64.1200(d)(5), a do-not-call request applies to the business entity making the call, not to a single marketing "campaign." Defendant's response confirming that Plaintiff Frank was unsubscribed "from this campaign," followed by continued calls and text messages from other Allstate telephone numbers and short codes, demonstrates that Defendant

records opt-out requests on a per-campaign basis rather than entity-wide, in violation of the minimum standards of § 64.1200(d).

67. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

68. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling and texting activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Frank requests a jury trial.

Respectfully Submitted,

**TINA FRANK**, individually and on behalf of all others similarly situated,

DATED this 10th day of August, 2026.

By: /s/ *Avi R. Kaufman*

Avi R. Kaufman (*pro hac vice*)
kaufman@kaufmanpa.com
**KAUFMAN P.A.**
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

Brian T. Giles (0072806)
Giles & Harper, LLC
7243 Beechmont Avenue,
Cincinnati, Ohio 45230
Telephone: (513) 379-2715
bgiles@gilesharper.com

*Attorneys for Plaintiff and the putative Class*