**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| TINA FRANK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALLSTATE INSURANCE COMPANY, a Delaware company,<br><br>Defendant. | ) | CASE NO.: 1:26-cv-01205<br><br>JUDGE CHARLES E. FLEMING |

**DEFENDANT ALLSTATE INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Allstate Insurance Company ("Allstate") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's First Amended Class Action Complaint ("Amended Complaint") [ECF No. 11], and in support states as follows:

## I. INTRODUCTION

Plaintiff Tina Frank filed her initial complaint in this action asserting a single claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5), alleging that Allstate violated the internal do-not-call provisions of 47 C.F.R. § 64.1200(d). Allstate moved to dismiss, arguing that Plaintiff lacked Article III standing and failed to state a claim because she had not alleged a qualifying do-not-call request, and further that her claim relied on text messages, which are not actionable "telephone calls" under § 227(c)(5).

In response, Plaintiff has filed this Amended Complaint asserting additional allegations that her text message stating "Im not a nicholas" constituted a stop request, that an automated

unsubscribe response demonstrates that Allstate recognized the message as such, and that Allstate violated § 64.1200(d)(5) because the response referred to a "campaign." But those additions still do not cure the defects in Plaintiff's claim. The statement "Im not a nicholas," does not request that Allstate stop calling or otherwise cease future telemarketing communications, and neither Plaintiff's characterization of that message nor the automated response that followed can transform it into a request that was never made. Without a qualifying do-not-call request, Plaintiff cannot establish traceability or state a claim under § 64.1200(d)(3).

Plaintiff's newly asserted theory under § 64.1200(d)(5) fares no better. That provision addresses whether a qualifying do-not-call request applies beyond the business entity making the call to affiliated entities. It does not regulate "campaigns" or campaign-specific opt-out processing. Finally, text messages do not qualify as telephone calls under § 227(c)(5).

Accordingly, the Amended Complaint should still be dismissed for three independent reasons. First, Plaintiff lacks Article III standing because she cannot trace her alleged injury to Allstate's purported noncompliance with § 64.1200(d). Second, the Amended Complaint fails to state a claim under Rule 12(b)(6) because it does not plausibly allege that Plaintiff ever made a qualifying do-not-call request that Allstate failed to honor. Third, § 227(c)(5) provides a private right of action only for "telephone calls," and text messages are, as a matter of law, not telephone calls. For each of these reasons, as detailed more fully herein, the Court should dismiss this action with prejudice.

## II. FACTUAL BACKGROUND

The Amended Complaint asserts the following allegations: Plaintiff is the owner of a cellular telephone number ending in 4348, which she alleges she acquired in September 2025. *Id.* ¶¶ 24–25. After obtaining the number, Plaintiff alleges that she received text messages addressed to an individual named "Nicholas." *Id.* ¶¶ 29, 31. On September 22, 2025, Plaintiff responded to

those messages stating, "Im not a nicholas." *Id.* ¶ 32. Plaintiff further alleges that she received an automated response stating that her number had been "unsubscribed" and contends that this response demonstrates that Allstate treated her message as a request to stop receiving communications, and to be placed on Allstate's internal do-not-call list. *Id.* ¶¶ 33–35.

The Amended Complaint further alleges that, between November 2025 and February 2026, Plaintiff received telephone calls from a number she alleges was associated with Allstate, some of which were not answered. *Id.* ¶¶ 37–45. During the only call that she answered, the caller allegedly identified itself as being associated with Allstate, and Plaintiff states that she informed the caller that it had reached the wrong number before ending the call. *Id.* ¶¶ 41–43. Plaintiff also alleges that she received additional text messages in February and March 2026 from telephone numbers and short codes associated with Allstate. *Id.* ¶¶ 47–51. Based on these allegations, Plaintiff purports to assert a claim under 47 U.S.C. § 227(c)(5) on behalf of herself and a putative class of individuals who allegedly received more than one telephone call and/or text message from Allstate, including at least one call or text message after requesting that such communications stop. *Id.* ¶¶ 56, 62–68.

## III. <u>LEGAL STANDARD</u>

### A. Article III Standing Under Rule 12(b)(1).

"Article III of the Constitution requires a litigant to have standing to invoke the jurisdiction of a federal court." *B. & V. Distrib. Co., Inc. v. Dottore Companies, LLC*, No. 1:05 CV 2900, 2006 WL 1134225, at *2 (N.D. Ohio Apr. 26, 2006) (citation omitted); *see Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012) ("[a]rticle III of the Constitution gives federal courts subject matter jurisdiction over actual cases or controversies, neither of which exists unless a plaintiff establishes his standing to sue.").

"Standing consists of three elements: (1) an injury in fact that is (2) fairly traceable to the defendant's challenged conduct, and (3) likely to be redressed by a favorable judicial decision." *Burt v. Playtika, Ltd*., 132 F.4th 398, 403 (6th Cir. 2025) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) and *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "Where the Article III standing requirement is not satisfied, the Court lacks subject matter jurisdiction over the case." *B. & V. Distrib. Co., Inc*., 2006 WL 1134225, at *2.

### B. Failure to State a Claim Under Rule 12(b)(6).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *see also Gavitt v. Born,* 835 F.3d 623, 640 (6th Cir. 2016) (explaining that "'a legal conclusion couched as a factual allegation' need not be accepted as true") (quoting *Twombly*, 550 U.S. at 555).

## IV. ARGUMENT

The implementing regulation that Allstate allegedly violated is 47 C.F.R. § 64.1200(d). *See* Am. Compl. ¶¶ 62–68. Specifically, Plaintiff alleges that Allstate violated § 64.1200(d)(3) by purportedly failing to record and honor her alleged do-not-call request and violated § 64.1200(d)(5) because an unsubscribe message referenced a particular "campaign," which Plaintiff contends demonstrates that Allstate "records opt-out requests on a per-campaign basis rather than entity-wide, in violation of the minimum standards." Am. Compl. ¶¶ 65–66. Neither theory states a viable claim. As discussed below, Plaintiff's Amended Complaint should be dismissed.

### A. Plaintiff Does Not Have Article III Standing to Bring Her Claim Under 47 C.F.R. § 64.1200(d).

To establish the traceability requirement of Article III standing, a plaintiff must show that there is a "causal connection between the injury and the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). In the context of an alleged violation of § 64.1200(d), Plaintiff must allege a "sufficiently direct causal connection between [her] receipt of unwanted" communications and Allstate's alleged failure to comply with § 64.1200(d). *See Thompson v. Genesco, Inc.*, No. 4:23-CV-00292-SRC, 2024 WL 81187, at *5 (E.D. Mo. Jan. 8, 2024) (internal quotation marks and citation omitted). The Amended Complaint contains no factual allegations plausibly establishing that causal link. And although Plaintiff characterizes her text message stating "Im not a nicholas" as a stop request, the communication itself contains no request that Allstate cease future telemarketing communications or place Plaintiff on an internal do-not-call list. *See* Am. Compl. ¶¶ 32–35.

The court's analysis in *Thompson v. Genesco, Inc.* is instructive. There, the plaintiff asserted a claim under § 64.1200(d) based on alleged failures to maintain compliant internal do-not-call procedures. *See id.* However, the court found that a critical link between the plaintiff's alleged injury and the purported violations was missing, namely, that the plaintiff never alleged that he asked to be placed on the defendant's internal do-not-call list. *Id.* at *5. The court emphasized that "Section 64.1200(d) requires entities to maintain 'a list of persons who *request* not to receive [telemarketing] calls.'" *Id.* (emphasis and alteration in original). The regulation therefore presupposes that the consumer made a request not to receive future telemarketing communications. Without such a request, the internal procedures a plaintiff challenges are never implicated. The court in *Thompson* therefore explained that, "even the best-maintained of internal

do-not-call lists would not have spared [the plaintiff] from annoying telemarketing messages if he never actually made that request." *Id.*

Because the plaintiff failed to allege that he made a do-not-call request that would have triggered the defendant's internal procedures, the court held that his alleged injury was not fairly traceable to the defendant's purported noncompliance with § 64.1200(d). *Id.* Accordingly, the court concluded that the plaintiff lacked Article III standing for failure to establish traceability. *Id.*

The same reasoning applies here. The Amended Complaint does not plausibly allege that Plaintiff made a qualifying do-not-call request. Plaintiff principally relies on two statements: a text message stating, "Im not a nicholas," and a later statement during a telephone call that the caller had reached the wrong number. *See* Am. Compl. ¶¶ 32, 43.

Plaintiff also points to an automated response stating that she had been unsubscribed "from this campaign" and alleges that the response demonstrates that Allstate recognized her message as a stop request. *Id.* ¶¶ 33–35. But Plaintiff's characterization of the message does not alter what she actually communicated. Even accepting Plaintiff's allegations as true, neither statement requested placement on Allstate's internal do-not-call list, directed Allstate to stop contacting Plaintiff, or otherwise communicated a desire not to receive future telemarketing communications.

This distinction is dispositive because § 64.1200(d) governs the procedures for recording and honoring requests not to receive future telemarketing communications. *Thompson*, 2024 WL 81187, at *5. The Amended Complaint also alleges that several calls went unanswered, and during the only incoming call Plaintiff allegedly answered, she stated only that the caller had reached the wrong number. *Id.* ¶¶ 37–43. When Plaintiff returned another of those calls, she still did not request placement on Allstate's internal do-not-call list or ask that communications cease. *See* Am. Compl. ¶¶ 44–45. Thus, Plaintiff never alleges the sort of request that would have triggered the procedures

she claims were deficient. As recognized in *Thompson*, an internal do-not-call list has no practical effect for a person who never would have been included on it. *Thompson*, 2024 WL 81187, at *5.

Other courts have reached the same conclusion. *See, e.g.*, *Stewart v. Network Capital Funding Corp*., 549 F. Supp. 3d 1058 (C.D. Cal. 2021). In *Stewart*, the plaintiff asserted claims under the TCPA's internal do-not-call provisions. *Id.* at 1059. The court dismissed those claims for lack of subject-matter jurisdiction because the plaintiff "did not clearly express a desire to stop receiving calls" from the defendant. *Id.* In response to the alleged unwanted call, the plaintiff stated that he did not have a house, after which the defendant apologized and ended the call. *Id.* at 1060. The court held that this statement, at best, "expressed disinterest" in the defendant's services and "fell short of clearly expressing his desire not to receive additional calls." *Id.* (internal citations, quotation marks, and alterations omitted). Thus, because the plaintiff had not clearly expressed his desire not to receive further calls from the defendant, he lacked standing to bring his internal do-not-call claims under the TCPA. *Id. See also Luckau v. Sunrun, Inc*., No. 25-CV-01661-JST, 2025 WL 2780784, at *1 (N.D. Cal. Sept. 30, 2025) (finding that plaintiff lacked standing where plaintiff failed to request to be placed on defendants' internal do not call list); *Perrong v. S. Bay Energy Corp.*, No. 2:20-CV-05781-JDW, 2021 WL 1387506, at *3 (E.D. Pa. Apr. 13, 2021) (stating plaintiff lacked standing because "even if Defendants had complied with the TCPA and maintained an internal do-not-call list, their compliance would not have prevented a call to Mr. Perrong because he would not have been on that list."); *see also Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) (explaining that if an individual never asked the company not to call them again, "it doesn't make any difference that [the company] hadn't maintained an internal do-not-call list" and holding that class members who never requested not to be contacted lacked Article III standing because their alleged injuries were not fairly traceable to the defendant's conduct).

Because Plaintiff has not pleaded the predicate request required by § 64.1200(d), she cannot establish the required causal connection between her alleged injury and Allstate's purported noncompliance with the regulation. Plaintiff's recharacterization of "Im not a nicholas" and reliance on the ensuing automated response do not supply the missing request. Plaintiff therefore lacks Article III standing, and her claim should be dismissed under Rule 12(b)(1).

### B. Plaintiff Fails to State a Claim Under Rule 12(b)(6) Because She Does Not Plausibly Allege a Qualifying Internal Do-Not-Call Request.

In addition to the foregoing standing defects, dismissal is warranted because the Amended Complaint fails to state a claim under Rule 12(b)(6). Section 64.1200(d) "relates to a marketer's duty to prepare internal policies to receive and implement affirmative requests not to receive calls." *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012). Although Plaintiff characterizes her communications as requests to stop receiving future telemarketing communications, the Amended Complaint does not plausibly allege that Plaintiff made the type of affirmative request contemplated by § 64.1200(d).

The only communications Plaintiff identifies as her purported opt-out requests are a September 22, 2025 text message in which she allegedly responded, "Im not a nicholas," and a telephone call where she later told a caller that they had reached the wrong number. *Id.* ¶¶ 32, 41–43. Moreover, as explained above, the Amended Complaint also alleges that several calls went unanswered. *Id.* ¶¶ 37, 39–40, 44–45. Even when Plaintiff alleges that she returned a call, she does not allege that she requested to be placed on an internal do-not-call list or otherwise directed Allstate to stop contacting her during such call. *Id.* ¶ 38.

Indeed, Plaintiff does not allege that she ever requested that Allstate "stop," "do not call," "do not text," "remove me," "place me on your do-not-call list," or used any other words requesting that Allstate cease future telemarketing communications. *See id.* Thus, Plaintiff has not pleaded a

request not to receive future telemarketing calls within the meaning of § 64.1200(d). *See generally Strange v. Doe #1*, No. CV 19-1096, 2020 WL 2476545, at *4 (W.D. La. May 12, 2020) (holding that plaintiff failed to plead a violation of § 64.1200(d) where he did not allege that he made an affirmative request that the defendant stop calling him or place him on its internal do-not-call list); *Cunningham v. Air Voice, Inc.*, No. 4:19-CV-00096-ALM-CAN, 2020 WL 9936139, at *6 (E.D. Tex. Feb. 14, 2020), *report and recommendation adopted*, No. 4:19-CV-96, 2020 WL 1433948 (E.D. Tex. Mar. 24, 2020) (same).

The Amended Complaint further demonstrates the disconnect between Plaintiff's allegations and the claim she actually asserts. Much of the Amended Complaint focuses on the allegation that Plaintiff acquired a telephone number previously associated with other individuals, as evidenced by the messages directed to "Nicholas" and "Annette." Am. Compl. ¶¶ 25, 31, 51–52. The Amended Complaint also devotes substantial attention to Allstate's alleged failure to identify reassigned telephone numbers. *Id.* at ¶¶ 16–19. But those allegations do not concern internal do-not-call procedures. Section 64.1200(d) regulates a telemarketer's obligation to record and honor a consumer's request not to receive future telemarketing communications. Whether Plaintiff received communications intended for a prior subscriber does not establish that she made a request not to receive future telemarketing communications, that Allstate failed to honor such a request, or that any alleged injury is traceable to the internal procedures challenged here. The Amended Complaint therefore relies on factual allegations that are legally irrelevant to the sole claim asserted.

And while § 64.1200(d) does not require a consumer to invoke any particular "magic words," it does require an *affirmative* request to be placed on the entity's internal do-not-call list or to otherwise cease telemarketing communications. *See Bailey*, 867 F. Supp. 2d at 842 (noting that the regulation "relates to a marketer's duty to prepare internal policies to receive and

implement affirmative requests not to receive calls") (emphasis added). A statement that merely identifies the recipient as someone other than the intended addressee, such as "Im not a nicholas" or a notification that the caller has reached the "wrong number," does not satisfy that requirement. *See* Am. Compl. ¶¶ 32, 43. Such statements convey, at most, that the caller has reached the wrong recipient. *See generally Stewart*, 549 F. Supp. 3d at 1058 (statement that plaintiff "did not have a house," at best, "expressed disinterest" and "fell short of clearly expressing his desire not to receive additional calls" (quotation marks omitted; cleaned up)). Because § 64.1200(d) is triggered only by a request to stop receiving telemarketing communications, a statement that speaks only to the recipient's identity, rather than to her desire not to be contacted, cannot support a claim under the regulation.

Plaintiff attempts to avoid that conclusion by alleging that the automated response to "Im not a nicholas" shows that Allstate "recognized" the message as a stop request. Am. Compl. ¶¶ 33–35. But the issue is not how an automated system processed or responded to the message. The issue is whether Plaintiff made the affirmative request required by § 64.1200(d). The response stating that Plaintiff had been "unsubscribed from this campaign" does not allege that Plaintiff requested placement on Allstate's internal do-not-call list, directed Allstate to cease future telemarketing calls, or otherwise expressed a desire not to receive such calls. Am. Compl. ¶ 33. Plaintiff's new characterization of the message does not alter its actual content. No amount of recharacterization can transform "Im not a nicholas" into an affirmative request not to be called.

Accordingly, Plaintiff has not plausibly alleged that she made a qualifying internal do-not-call request before the alleged calls at issue. Because Count I depends on an alleged failure to honor such a request, the claim should be dismissed.

### C. Plaintiff's Newly Asserted § 64.1200(d)(5) Theory Does Not Cure the Defect.

Plaintiff's reliance on 47 C.F.R. § 64.1200(d)(5) is misplaced. Subsection (d)(5) addresses the scope of a qualifying do-not-call request and provides that such a request generally applies to the business entity making the call, rather than automatically extending to affiliated entities. *See Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17-CV-587, 2018 WL 3933472, at *4 (S.D. Ohio Aug. 16, 2018) (stating that § 64.1200(d)(5) provides "a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made)"). It does not address how an entity must structure its internal suppression lists, maintain marketing campaigns, or process opt-out requests across campaigns. Thus, Plaintiff's theory that subsection (d)(5) prohibits campaign-specific opt-out processing reads into the regulation an obligation that does not exist in its text. The Amended Complaint therefore fails to plausibly allege a violation of § 64.1200(d)(5).

### D. Plaintiff Cannot Base Her § 227(c)(5) Claim On Alleged Text Messages Because Text Messages Are Not "Telephone Calls."

Despite amending her pleading, Plaintiff continues to rely on alleged text messages to support both her individual claim and her putative class allegations. *Id.* ¶¶ 46, 47–52, 56. But that theory fails because § 227(c)(5) reaches only "telephone call[s]," and text messages do not qualify as telephone calls under the statute.

The TCPA does not define the term "telephone call" as used in § 227(c)(5). In *Loper Bright Enterprises v. Raimondo*, the Supreme Court held that courts must exercise their independent judgment when interpreting statutes and may not defer to an agency's interpretation merely because a statute is ambiguous. 603 U.S. 369, 389–99 (2024). Consistent with that directive, the Court subsequently held in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*, that district courts are not bound by the Federal Communications Commission's interpretation of

the TCPA and must determine the statute's meaning under ordinary principles of statutory interpretation. 606 U.S. 146, 149, 155, 168 (2025). Accordingly, this Court must independently determine whether the term "telephone call" encompasses text messages.

The starting point for statutory interpretation is the text itself. *Deutsche Bank Nat. Tr. Co. v. Tucker*, 621 F.3d 460, 462 (6th Cir. 2010) (citation omitted). Section 227(c)(5) provides a "private right of action" for a "person who has received more than one telephone call within any 12-month period . . . in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). The statute does not reference text messages.

Applying ordinary meaning principles, courts have concluded that "telephone call" does not encompass text messages. Most recently, the Seventh Circuit held that § 227(c)(5)'s private right of action does not extend to text messages because the statute authorizes suit only for the receipt of unwanted "telephone calls," not messages. *See Steidinger v. Blackstone Med. Services*, No. 25-2398, 2026 WL 2028517, at *1–2 (7th Cir. July 14, 2026). The court explained that, under the ordinary public meaning of the term at the time of the TCPA's enactment, a "telephone call" referred to communication through sound. *Id.* at *2 (relying on Webster's Ninth New Collegiate Dictionary (1991)). On the contrary, "[t]ext messages do not reproduce sounds." *Id.* The court further emphasized that Congress used broader terms elsewhere in § 227, including "telephone solicitation," which expressly encompasses both calls and messages, but chose not to employ that language in § 227(c)(5). *Id.* Accordingly, the Seventh Circuit found that the district court properly dismissed plaintiff's TCPA claims. *Id.*

While the Sixth Circuit has not addressed the issue, this District has. In *Stockdale v. Skymount Property Group, LLC*, the Northern District of Ohio held that "the term 'telephone call' as used in Section 227(c)(5) of the TCPA does not encompass 'text messages.'" 825 F. Supp. 3d 622, 624 (N.D. Ohio 2026). The court explained that, at the time of the TCPA's enactment, a "call"

referred to "the act of calling on the telephone" and that a "telephone" was understood as an instrument for transmitting sound at a distance, not written text messages. *Id.* at 625.

Similarly, the court in *Davis* explained, "[n]o normal person refers to a text message, or thinks of a text message, as a 'call.'" *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025). Likewise, the court in *Jones* explained that "in today's American parlance, 'telephone call' means something entirely different from 'text message.' Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages." *Jones v. Blackstone Med. Services, LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025). Accordingly, the ordinary meaning of the term "telephone call" is enough to end the analysis.

Even if the term "telephone call" were considered ambiguous, the broader statutory context confirms the same result. *See United States ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 431 (6th Cir. 2021) (explaining that "if the text is unclear, we may look at the [t]he broader context of the statute and statutory purpose together to resolve the ambiguity") (internal quotation marks and citation omitted). Congress has expressly distinguished between calls and text messages elsewhere in the TCPA. *See Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-CV-00846-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (noting that "the term 'text message' appears elsewhere in the TCPA" and that Congress "understood the pertinent distinction"). And where Congress uses different terms in different provisions, courts presume those terms carry different meanings. *See Lopez-Campos v. Raycraft*, 175 F.4th 713, 723 (6th Cir. 2026). The omission of "text message" from § 227(c)(5) therefore reflects a deliberate choice to limit that provision to "telephone calls."

Historical context further reinforces that conclusion. When Congress enacted the TCPA in 1991, text messaging technology did not exist, and the ordinary meaning of "telephone call" did not encompass such communications. *See Salcedo v. Hanna*, 936 F.3d 1162, 1169 (11th Cir. 2019).

Although technology has evolved, courts "cannot rewrite the TCPA to update it for modern technology." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 397 (2021). Accordingly, Plaintiff cannot rely on alleged text messages to state a claim under § 227(c)(5) because text messages do not constitute the "telephone call[s]" required by the statute. Those allegations therefore cannot support Plaintiff's claim or the putative class allegations premised on the receipt of text messages.

## V. A DISMISSAL WITH PREJUDICE IS WARRANTED

The Court should dismiss Plaintiff's Amended Complaint with prejudice because further amendment would be futile. *See Layer-Rosario v. Allied Mortgage Capital Corp*., No. 17-5468, 2018 WL 1989636, at *3 (6th Cir. Jan. 9, 2018) ("Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss."). Plaintiff has already amended her pleading after Allstate identified the deficiencies in the original Complaint, yet the Amended Complaint still fails to state a viable claim. The alleged communications identified in the Amended Complaint merely informed Allstate that Plaintiff was not the intended recipient and that a caller had reached the wrong number. As a matter of law, those statements do not constitute a qualifying do-not-call request under § 64.1200(d). Moreover, no amendment can transform alleged text messages into actionable "telephone calls" under § 227(c)(5). Because the deficiencies arise from the nature of Plaintiff's allegations, rather than inartful pleading, dismissal with prejudice is warranted.

## VI. CONCLUSION

For the foregoing reasons, Allstate respectfully requests that the Court dismiss Plaintiff's Amended Complaint with prejudice and grant such other and further relief as the Court deems just and proper.

Dated: August 24, 2026

Respectfully submitted,

By: /s/ Jeffrey Mayer
Jeffrey Mayer
**AKERMAN LLP**
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
Telephone: (312) 634-5700
Facsimile: (312) 424-1900
Email: jeffrey.mayer@akerman.com

**AKERMAN LLP**
201 E. Las Olas Boulevard
Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224

*/s/ Eric D. Coleman*
Eric D. Coleman
Florida Bar No. 124963
(*Admitted pro hac vice*)
E-mail: eric.coleman@akerman.com
E-mail: lauren.chang-williams@akerman.com
Cherly Lucien
Florida Bar No. 1025987
(*Admitted pro hac vice*)
Primary Email: cherly.lucien@akerman.com
Secondary Email:
sharon.luesang@akerman.com

*Attorneys for Defendant Allstate Insurance Company*

**CERTIFICATION OF COMPLIANCE WITH PAGE LIMITS**

This case is assigned to the Standard Track. Undersigned counsel hereby certifies that the Memorandum adheres to the twenty (20) page limitation permitted by Local Rule 7.1(f).

*/s/ Jeffrey Mayer*
Jeffrey Mayer
*Attorney for Defendant Allstate Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 24, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Jeffrey Mayer*
Jeffrey Mayer
*Attorney for Defendant Allstate Insurance Company*