**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| TINA FRANK, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>ALLSTATE INSURANCE COMPANY, a Delaware company,<br><br>*Defendant.* | Case No. 1:26-cv-01205-CEF<br><br>**CLASS ACTION** |

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT ALLSTATE'S MOTION TO DISMISS**

## INTRODUCTION

This Court should deny Defendant Allstate Insurance Company's ("Defendant" or "Allstate") meritless motion to dismiss. ECF 12.

*First*, Plaintiff Frank opted out of all telephone solicitations from Defendant Allstate by responding to an unsolicited text message from Allstate addressed to "Nicolas" and stating "I'm not Nicolas." Allstate understood this response from Plaintiff as a request not to be contacted and confirmed she had opted out of future communications. Yet Allstate continued to send her solicitation calls and messages despite that fact. Plaintiff Frank has thus plausibly alleged that Allstate failed to honor stop requests for purposes of her internal do-not-call list Telephone Consumer Protection Act ("TCPA") claim.

*Second*, Plaintiff Frank has standing. It is undisputed that she received unsolicited text messages from Defendant Allstate—after telling Allstate to stop contacting her, the receipt of which constitutes an injury-in-fact for purposes of Article III standing under well-established law.

Accordingly, she has standing to assert her claims under the TCPA's Do Not Call Registry provisions.

*Third*, as the majority of district courts to evaluate the issue post *McLaughlin Chiropractic* has concluded, text messages qualify as "calls" under the TCPA's National Do Not Call Registry ("DNCR") provision and are subject to the same restrictions as voice solicitations. Holding otherwise would nullify Congress's protections granted by the TCPA, allow telemarketers to exploit the most dominant form of communication today, and erode consumer trust.

## ARGUMENT

### I. Plaintiff Sufficiently Alleges She Opted Out of Communications from Defendant.

Plaintiff plausibly alleges that she unsubscribed from communications with Defendant. As stated in Plaintiff's complaint, her response that she was not the intended recipient of Allstate's messages and calls was sufficient and qualifies as a do not call request. Even Defendant Allstate confirmed that Plaintiff requested not to be contacted by "unsubscribing" her from further communications, only confirming that Plaintiff's request was valid. *See* FAC, ECF 11, ¶¶ 32-33.

First, Plaintiff's response stating that she "Is not Nicolas" was sufficient. The text of 47 C.F.R. § 64.1200(a)(10) provides that prior express consent may be revoked "by using any reasonable method to clearly express a desire not to receive further text messages or calls from the caller or sender." The regulation expressly states that when a consumer uses words other than "stop" or "unsubscribe," a defendant "must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent." *Id.* And that's precisely what Plaintiff's message to Defendant Allstate conveyed. Plaintiff's message stating that she was not the intended recipient of the messages constituted a reasonable and unambiguous desire for Defendant to cease sending her text messages or calling her.

Second, Defendant correctly understood Plaintiff's request as exactly that. Indeed, Defendant Allstate acknowledged Plaintiff's request and acted accordingly by immediately confirming that Plaintiff would be unsubscribed from further communications. FAC ¶ 33.

Defendant Allstate cannot defeat Plaintiff's claim as a matter of law merely because Plaintiff didn't use the word "STOP" to opt-out. Plaintiff successfully unsubscribed to Allstate's solicitation communications, and this was confirmed by Allstate's own immediate recognition of the opt-out.

Defendant's argument otherwise improperly elevates a suggested opt-out keyword into mandatory magic words. *See* ECF 12-1, PageID 99-102. The TCPA does not require a consumer to use any magic word or to utter the precise word "STOP" before a sender must honor an otherwise clear request to cease communications. *See* 47 C.F.R. § 64.1200(a)(10); *see also Bosley v. A Bradley Hosp. LLC*, No. 25-cv-22336, 2025 U.S. Dist. LEXIS 183986, at *22 (S.D. Fla. Sep. 18, 2025) (denying motion to dismiss in internal do-not-call putative class action, construing plaintiff's "no stop" message reply to state a claim for relief and noting that the "caller must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent). Here, Plaintiff made unequivocally clear that she was not the intended recipient of Allstate's solicitation communications and, therefore, that she wanted them to stop. Defendant Allstate's confirmation and unsubscribing Plaintiff from future communication confirms it.

After all, even Defendant Allstate acknowledges in its motion that a consumer is not required "to invoke any particular 'magic words'" to effectively opt-out of communications. ECF 12-1, PageID 100. Which is likely why Allstate itself confirmed Plaintiff's opt-out request with its

follow-up message confirming she had opted-out and stating she "successfully unsubscribed" from future communications from Allstate. *See* FAC ¶¶ 32-33.

In her operative complaint, Plaintiff specifically alleges that she responded to Defendant's text message stating "I'm not Nicolas," because the messages were addressed to someone called Nicolas, presumably the old subscriber to the telephone number. FAC ¶ 32. Whether those words objectively communicated a desire that Defendant cease further communications—not whether Plaintiff employed Defendant's preferred keyword—is the relevant inquiry. *See* 47 C.F.R. § 64.1200(a)(10). At a minimum, whether a reasonable person would understand Plaintiff's response as an opt-out request presents a factual question that cannot properly decided on the pleadings.

Again, importantly, Defendant's own conduct demonstrates that Allstate understood Plaintiff's message exactly that way—a request to no longer be contacted. Upon receiving Plaintiff's response, Defendant sent an automated message confirming that Plaintiff had been unsubscribed from future communications. Defendant thus asks the Court to accept the far-fetched proposition that Plaintiff's message was sufficiently clear for Defendant's own system to identify, process, and acknowledge it as an opt-out request, yet somehow insufficiently clear to constitute an opt-out for purposes of the TCPA. Defendant cannot plausibly characterize Plaintiff's language as ambiguous when its contemporaneous response demonstrates precisely the opposite.

Indeed, courts have held that even a plaintiff who alleged she sent the words "No stop" in response as an effort to opt-out of further communications was sufficient for purposes of her TCPA internal do not call claim. *See Bosley*, 2025 U.S. Dist. LEXIS 183986, at *21-22. In denying the defendant's motion to dismiss, the court in *Bosley* emphasized section 64.1200(a)(10)'s reasonable person standard, holding that the "No stop" language did not establish continued consent to receive

solicitation messages and calls; rather, a reasonable person could understand the communication as requesting that the communications stop. *Id.* at *22. This Court should find the same here.

At a minimum, Plaintiff's allegations plausibly establish that a reasonable person could understand Plaintiff's words as conveying a request to cease further communications. Just like Defendant itself understood it. Defendant's motion should thus be denied on this basis.

## II. Plaintiff Frank Has Standing.

Defendant Allstate's argument that Plaintiff lacks standing would require this Court to find, as a matter of law, that Plaintiff did not receive unsolicited solicitation text messages or calls as plainly alleged in her operative complaint. *See* ECF 12-1, PageID 95-98. Such a finding simply cannot be made at the pleading stage based on Plaintiff's clear and straightforward allegations. *See, e.g.*, FAC, ECF 11, ¶ 29 ("Between September 18, 2025 and September 22, 2025, Plaintiff Frank received a series of solicitation text messages to her cell phone from 615-488-9799.").

It is well-established that "the receipt of an unwanted text message causes a concrete injury," thereby providing a plaintiff with standing to bring a TCPA claim. *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023); *see also Bosley*, 2025 U.S. Dist. LEXIS 183986, at *10-12 (denying motion to dismiss, finding standing because plaintiff "adequately alleged defendant sent her at least one unwanted text message as outlined under the TCPA").

Defendant's citation to *Thompson v. Genesco, Inc.*, No. 4:23-cv-00292-SRC, 2024 U.S. Dist. LEXIS 3203 (E.D. Mo. Jan. 8, 2024), is inapposite. *See* ECF 12-1, PageID 96. In *Thompson*, there were zero allegations that the text messages sent to the plaintiff were unsolicited or that he asked for the communications to stop. *Id.* at *14. The *Thompson* complaint also contained no allegation that the plaintiff communicated in any way to the defendant that it had the wrong number or wrong person. *Id.*

Here, however, Plaintiff expressly alleges that she requested the communications to stop and that Allstate acknowledged that request. FAC ¶¶ 31-36. But even after acknowledging Plaintiff's request to unsubscribe, she continued receiving messages and calls. *Id.*

Plaintiff has sufficiently alleged that she received unsolicited text messages and calls from Defendant Allstate. She therefore has standing to assert her TCPA claim.

## III. The TCPA's do-not-call provisions authorize the FCC to prohibit text messages.

Defendant Allstate next tries to defeat Plaintiff's claim through its new contention that a single use of the phrase "telephone call" in section 227(c)(5)'s private right of action means that the Do Not Call List rules cannot apply to text messages. *See generally* ECF 12-1. That's incorrect. The plain meaning of the word "call," long recognized by other courts and the FCC, refutes that argument. The statutory context confirms that a text can be a "call." And Allstate's arguments in support of its contrary interpretation do not withstand scrutiny.

### *A. The plain meaning of the word "call" includes text messages.*

To interpret a statutory term, courts look to its "ordinary meaning" when the statute was enacted, often "by reference to dictionaries in use at the time." *Delek US Holdings, Inc. v. United States*, 32 F.4th 495, 498 (6th Cir. 2022). Here, the "ordinary, contemporary, common meaning" of the word "call" in this context is "'to communicate with or try to get into communication with a person by a telephone.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 & n.3 (9th Cir 2009) (quoting Webster's Third New International Dictionary (2002)). Like other courts, the Sixth Circuit has held that this definition—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress intended in 1991, when the TCPA was enacted. *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013).

And texting is, of course, a means of communicating with someone by telephone. So the established definition of "telephone call" readily encompasses texts. *See, e.g.*, *Wilson v. Medvidi Inc.*, No. 5:25-cv-03996-BLF, 2025 U.S. Dist. LEXIS 198827, at *3 (N.D. Cal. Oct. 7, 2025); *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 U.S. Dist. LEXIS 221088, at *5 (N.D. Ill. Nov. 10, 2025).

The established meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. Absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). The word "call" is used extensively in the provisions of the statute that prohibit automatic dialing technology and robocalls, which were also part of the statute when it was first enacted in 1991. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call. So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005 (N.D. Ill. 2010).

Courts have therefore "routinely found that the phrase 'call' in subsection (b) … includes text messages." *Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 U.S. Dist. LEXIS 165676, at *7 (M.D.N.C. Aug. 12, 2024); *see, e.g.*, *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). And that "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 U.S. Dist. LEXIS 221088, at *5.

Likewise, the FCC determined as early as 2003 that, when the TCPA says "call," it "encompasses both voice calls and text calls to wireless numbers." 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). The FCC first announced its interpretation of the word "call" in the context of the TCPA's autodialer provisions, presumably because those provisions of the statute use the word more extensively. *See Medvidi*, 2025 U.S. Dist. LEXIS 198827, at *3. But the FCC has since confirmed, including in a formal regulation, that the meaning of the word "call" is the same in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); 38 FCC Rcd. 12247, 12256–57 ¶ 26 (2023); *Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (F.C.C. Dec. 21, 2018). That interpretation reflects "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *Medvidi*, 2025 U.S. Dist. LEXIS 198827, at *5.

### ***B. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions.***

Allstate's argument focuses mainly on the use of the word the "call" in section 227(c)(5). But reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered. To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id.* And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers. *See, e.g.*, *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165-TPB-SPF, 2025 U.S. Dist. LEXIS 158157, at *3 (M.D. Fla. Aug. 15, 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

The term "telephone solicitation" also clearly encompasses text messages. The statute expressly defines a "telephone solicitation" to mean "a telephone *call or message* … which is

transmitted to *any person*" for commercial purposes. 47 U.S.C. § 227(a)(4) (emphasis added). That reference to a "call or message" covers texts even more clearly than the word "call" standing alone. As explained above, "the ordinary, contemporary, and common meaning" the word "call" in the TCPA includes text messages. *Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, III.A.

And contemporary definitions of the word "message" do too—a message was "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, Black's Law Dictionary (6th ed. 1990) (emphasis added). More generally, the definition of "telephone solicitation" focuses not on a communication's form but on whether it has "the purpose of encouraging" various kinds of commercial transactions. 47 U.S.C. § 227(a)(4); *see, e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025) (Do Not Call List liability turned on whether a text message had the requisite commercial purpose). At the same time, the statute uses broad, inclusive language to describe how such a communication might be conveyed—the FCC is directed to prohibit "making *or* transmitting" a telephone solicitation to "any" listed number, and a telephone solicitation is a "call *or* message" that is "transmitted to *any* person." 47 U.S.C. § 227(a)(4), (c)(3)(F) (emphases added). Congress presumably used all that broad and disjunctive language to capture a wide range of communication mediums, including text messages. *See Medvidi*, 2025 U.S. Dist. LEXIS 198827, at *5 (explaining that the "telephone solicitation" definition "makes clear that Congress was more concerned with the purpose of the telephone communications … than the form in which those communications are transmitted"); *Pepper v. GVG Capital LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) (similar).

Finally, the purpose of the Do Not Call List provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). And nothing in the

TCPA suggests that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 U.S. Dist. LEXIS 198827, at *5.

***C. Allstate's case for a narrow interpretation is unpersuasive.***

Allstate would have this Court interpret the Do Not Call List provisions more narrowly, insisting that the words "telephone call" in section 227(c)(5) can only mean "voice call," and therefore the statute categorically excludes text messages. Its arguments rely primarily on out-of-circuit cases, including *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026), *Stockdale v. Skymount Prop. Grp., LLC*, No. 1:25 CV 1282, 2026 U.S. Dist. LEXIS 42954 (N.D. Ohio Mar. 3, 2026), and their progeny. *See* ECF 12-1, PageID 102-05. But none of the arguments made by Defendant or by those cases is persuasive.

First, Allstate (echoing *Steidinger*), insists that "telephone call" cannot encompass text messages because "text messaging technology did not exist" in 1991. ECF 12-1, PageID 104-05; *see also Steidinger*, 182 F.4th at 536.

But that's not how statutory interpretation works. It's true that text messaging did not exist in 1991, so Congress didn't have texting specifically in mind. *See Keating*, 615 F. App'x at 370; *Medvidi*, 2025 U.S. Dist. LEXIS 198827, at *4. But statutes are not "confined to the particular applications contemplated by the legislators." *Diamond v. Chakrabarty*, 447 U.S. 303, 315–16 (1980). "While every statute's meaning is fixed at the time of enactment," it is commonplace that "new applications may arise in light of changes in the world." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). That's why a 1991 law that said "no vehicles in the park" would prohibit Cybertrucks and Priuses, not just Mustangs and Corollas. *See Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984) (similar example with Volkswagens).

The same is true here. "In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage." *Medvidi*, 2025 U.S. Dist. LEXIS 198827, at *3. The 1991 meaning of "call"—which "refers to both oral and written communications"—is what matters. *Id.*; *see Lozano*, 702 F. Supp. 2d at 1007.

Next, Defendant claims that even if text messaging existed in 1991, a normal person wouldn't refer to a text message as a telephone call or that wasn't the term's common usage. ECF 12-1, PageID 104. *Steidinger* and another district court also relied on that same logic—both found it impossible to read "call" in anything but the familiar colloquial sense, and so concluded that the "analysis begins and ends there." *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025).

But modern colloquial usage is irrelevant where statutory meaning was fixed at enactment. *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 114-16 (2019). The question is whether the 1991 meaning of "call" encompassed communications by telephone generally, and courts have repeatedly held it does. *See Satterfield*, 569 F.3d at 953–54. Defendant's interpretation fares no better when it comes to the broader statutory context. Defendant cannot square its anomalous reading of section 227(c)(5)'s private right of action with the substantive Do Not Call List provisions it exists to enforce. Defendant also has no good answer for nearby uses of the word "call" in section 227(b), the autodialer provisions of the original TCPA. Allstate and its cases do not dispute that "call" covers text messages in the autodialer provisions. Nor could they: the meaning of "call" is especially clear in section 227(b) because it's used there to describe a (typically text-focused) transmission to a "paging service." In response, all Allstate's cases say is

that section 227(b) is a different provision and could in theory be broader than section 227(c). *See Steidinger*, 182 F.4th at 538; *Davis*, 797 F. Supp. 3d at 1274.

What's missing, however, is any credible reason to think that "call" actually does mean something broader in section 227(b) than in section 227(c). Absent good reason to think otherwise, a statutory term is presumed to have a consistent meaning throughout a statute. *See Henson*, 582 U.S. at 85. Allstate doesn't say why the meaning of "call" would differ between the two provisions. Nor does *Steidinger*. The only possible distinction comes from *Davis*, which notes that 227(b) says it's unlawful to make "any call" to various kinds of devices using an autodialer, whereas section 227(c) refers to a prohibited "telephone call." *See* 797 F. Supp. 3d at 1273. But, as explained above, the word "telephone" isn't doing any work here. And "any" is hardly unique to section 227(b)(1)(A); section 227(c) uses similarly expansive modifiers, requiring the FCC to "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included" in the Do Not Call List. 47 U.S.C. § 227(c)(3)(F).

To the contrary, reading the word "call" differently in section 227(c)(5) than in section 227(b) would make no sense. If Congress wanted to limit only the private right of action in section 227(c)(5) to voice communications, implicitly doing so with the word "call" would have been a strange way to go about it. After all, the word "call" does include textual communication in other provisions of the statute. If Congress intended to cabin section 227(c)(5)'s private right of action to exclude text messages, it wouldn't have done so by using a term that elsewhere includes them. Congress would not have excluded text messages in section 227(c)(5) by using a term that in section 227(b) includes them. So "there is no reason to believe that ['call'] has a different meaning when used in the do-not-call provisions." *Dawson v. Porch.com*, No. 2:20-cv-00604-RSL, 2024 U.S. Dist. LEXIS 206363, at *13-14 (W.D. Wash. Nov. 13, 2024).

### *D. Any doubt that section 227(c) covers text messages should be resolved by deferring to the FCC's longstanding interpretation that text messages are covered.*

The best reading of the TCPA is that the word "call" includes text messages. But even if ambiguity remained, the FCC's longstanding interpretation confirms that conclusion. Congress expressly delegated authority to the FCC to craft and implement the Do Not Call regulations, including determining the rules "most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E); *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394–95 (2024) (courts continue to respect express delegations of discretionary authority to agencies). As one court recognized post-*Loper Bright*, section 227(c) "explicitly delegates such authority" to the FCC. *Wilson v. Skopos Fin.*, LLC, No. 6:25-cv-00376-MC, 2025 U.S. Dist. LEXIS 138638, at *11–12 (D. Or. July 21, 2025).

To be sure, *Chevron* no longer applies, and courts are not bound to adopt FCC interpretations reflexively. *See Loper Bright*, 603 U.S. at 412–13; *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). But where Congress delegated authority to the FCC to implement the statute through open-ended standards concerning consumer privacy and regulatory effectiveness, the FCC's reasonable interpretation remains highly persuasive. *See Loper Bright*, 603 U.S. at 395. Allstate's argument to the contrary, and suggestion that the FCC's longstanding and well-reasoned interpretations should be cast aside and disregarded, is not persuasive. *See* ECF 12-1, PageID 102-103.

The FCC has consistently interpreted the TCPA's use of the word "call" to include text messages for more than two decades. *See* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003); 38 FCC Rcd. 12247, 12256–57 ¶ 26 (2023). The FCC reasonably explained that applying the Do Not Call rules to texts promotes consistent enforcement and avoids consumer and industry confusion. 38 FCC Rcd. at 12256– 57 ¶¶ 26–27 & n.59. That interpretation is both reasonable and consistent with the

TCPA's broader consumer protection purposes, and therefore warrants substantial respect. *See Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 180 (2025).

In short, the statutory text, structure, purpose, and longstanding regulatory interpretation all confirm that the TCPA's Do Not Call provisions apply to text messages. Allstate's contrary interpretation would create an artificial loophole that undermines Congress's consumer-privacy objectives and conflicts with how courts, consumers, and the FCC have understood the statute for decades.

## CONCLUSION

For all of these reasons, Defendant Allstate LLC's motion to dismiss should be denied in its entirety.

DATED this 22nd day of September, 2026.

Respectfully submitted,

By: /s/ *Avi R. Kaufman*
Avi R. Kaufman
kaufman@kaufmanpa.com
**KAUFMAN P.A.**
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

Brian T. Giles (0072806)
Giles & Harper, LLC
7243 Beechmont Avenue,
Cincinnati, Ohio 45230
Telephone: (513) 379-2715
bgiles@gilesharper.com

*Attorneys for Plaintiff and the putative Class*

## LOCAL RULE CERTIFICATION

Pursuant to Local Rule 7.1(f), the undersigned hereby certifies that the foregoing opposition memorandum complies with the page length limitations set forth for oppositions to dispositive motions in standard cases.

/s/ Avi R. Kaufman

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 22, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ Avi R. Kaufman