**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| TINA FRANK, individually and on behalf of all others similarly situated, | ) | CASE NO.: 1:26-cv-01205 |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| vs. | ) | |
| ALLSTATE INSURANCE COMPANY, a Delaware company, | ) | |
| Defendant. | ) | |

**DEFENDANT ALLSTATE INSURANCE COMPANY'S**
**REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO**
**DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Allstate Insurance Company ("Allstate") respectfully submits this Reply Memorandum in Support of its Motion to Dismiss Plaintiff's First Amended Class Action Complaint ("Amended Complaint") [ECF Nos. 12, 12-1], and, in further support, states as follows:

## INTRODUCTION

Plaintiff's opposition confirms that dismissal is appropriate. Plaintiff's § 64.1200(d)(5) theory is not defended, her do-not-call request argument fails even under the inapplicable regulatory framework she advances, her standing discussion focuses on injury-in-fact while largely ignoring the traceability requirement at issue, and her text message arguments do not overcome the plain language of § 227(c)(5). For these reasons, as further discussed below, Allstate respectfully submits that Plaintiff's Amended Complaint should be dismissed with prejudice.

## ARGUMENT

**1. Plaintiff Lacks Article III Standing for Failure to Establish Traceability.**

Plaintiff's standing argument attacks a position Allstate does not take. Allstate does not dispute that the receipt of an unwanted call or text message may constitute a concrete injury for purposes of Article III. Nor does Allstate's Motion ask the Court to conclude, as a matter of law, that Plaintiff did not receive the communications alleged in the Amended Complaint. Rather, Allstate's Motion challenges Plaintiff's failure to establish traceability. *See* Def.'s Mem. Supp. Mot. Dismiss at 5–8.

Standing requires three elements: (1) an injury in fact, (2) that is fairly traceable to the challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Here, Plaintiff's sole claim is that Allstate violated the TCPA's internal do-not-call regulations, specifically 47 C.F.R. § 64.1200(d). *See* Am. Compl. ¶¶ 62–68. Accordingly, Plaintiff must show a "sufficiently direct causal connection between" the receipt of unwanted messages and the "alleged failure to comply with the strictures of § 64.1200(d)." *See Thompson v. Genesco, Inc.*, No. 4:23-CV-00292-SRC, 2024 WL 81187, at *5 (E.D. Mo. Jan. 8, 2024). Plaintiff's Opposition does not meaningfully address that requirement. Instead, she relies primarily on cases recognizing that an unwanted call or text message may constitute a concrete injury. But those cases concern injury-in-fact, not traceability. *See* Opp. 5; *Drazen v. Pinto*, 74 F.4th 1336, 1339 (11th Cir. 2023) ("This case zooms in on standing's injury-in-fact component."); *Bosley v. A Bradley Hosp. LLC*, No. 25-CV-22336, 2025 WL 2686984, at *4 (S.D. Fla. Sept. 19, 2025) (relying on *Drazen* and concluding that receipt of an unwanted message constituted concrete injury). Whether Plaintiff suffered an injury from receiving communications does not answer the separate question of whether that injury was caused by the alleged regulatory violation underlying her claim.

Nor is *Thompson v. Genesco, Inc.* distinguishable as Plaintiff suggests. There, the court held that a plaintiff asserting an internal do-not-call claim must allege a causal connection between the communications received and the defendant's purported failure to maintain or utilize an internal do-not-call list. *See Thompson*, 2024 WL 81187, at *4–5. Because the plaintiff in *Thompson* never alleged that he asked to be placed on such a list or otherwise requested that the communications stop, the court concluded that his injuries were not fairly traceable to the alleged violation of § 64.1200(d). *Id.* at *5.

That is precisely the issue here. Plaintiff attempts to distinguish *Thompson* by asserting that she "requested the communications to stop" and that Allstate "acknowledged that request." *See* Opp. 5. But, for the reasons set forth in Allstate's Motion and in Section 2 below, Plaintiff has not plausibly alleged that her statement "Im not a nicholas" constituted a request not to receive future communications. Absent such a request, Plaintiff cannot plausibly allege that any subsequent communications were caused by a failure to record, maintain, or honor an internal do-not-call request.

Because Plaintiff has failed to plausibly allege that she made the qualifying request necessary to trigger the internal do-not-call obligations on which her claim depends, she has not established that her alleged injuries are fairly traceable to Allstate's alleged noncompliance with § 64.1200(d). Plaintiff therefore lacks Article III standing, and dismissal remains appropriate.

**2. Plaintiff Fails to Plausibly Allege a Qualifying Do-Not-Call Request.**

Plaintiff contends that her initial text message stating "Im not a nicholas"[1] constituted a sufficient do-not-call request. *See* Opp. 2. Plaintiff relies on 47 C.F.R. § 64.1200(a)(10), which provides that *prior express consent may be revoked* through any reasonable method that clearly

[1] Plaintiff's Opposition uses "Is not Nicolas," but the Amended Complaint alleges that Plaintiff's actual response was "Im not a nicholas." *See* Am. Compl. ¶ 32. While the distinction is not outcome-determinative, the Court's analysis should be based on the allegations actually pled.

expresses a desire not to receive further calls or text messages. *Id.* However, this **<u>is not</u>** a consent revocation case. Still, Plaintiff relies on § 64.1200(a)(10) to argue that her statement that she was not the intended recipient conveyed a request to stop future communications. *See* Opp. 2–5.

Plaintiff's reliance on § 64.1200(a)(10) is misplaced. Plaintiff's sole claim arises under the TCPA's internal do-not-call provisions, specifically 47 C.F.R. § 64.1200(d). *See* Am. Compl. ¶¶ 63–68. By its terms, § 64.1200(a)(10) governs the revocation of prior express consent for calls and text messages made pursuant to paragraphs (a)(1)-(3) and (c)(2). It does not purport to define what constitutes a do-not-call request under § 64.1200(d)(3), which requires that an entity receive "a request from a residential telephone subscriber not to receive calls from that person or entity." 47 C.F.R. § 64.1200(d)(3).

Nor does *Bosley v. A Bradley Hospitality LLC* compel a different result. There, the defendant argued for application of § 64.1200(a)(10) to determine whether an internal do-not-call request under § 64.1200(d) was insufficient. *See Bosley v. A Bradley Hosp. LLC*, No. 25-CV-22336, 2025 WL 2686984, at *3 (S.D. Fla. Sept. 19, 2025). The Court concluded that the plaintiff's response, "No stop," could plausibly be understood as a request that the communications stop. *Id.* at *8. However, *Bosley* did not hold that § 64.1200(a)(10) governs all claims brought under § 64.1200(d). And even assuming that this Court elects to consider § 64.1200(a)(10) in a similar fashion, *Bosley* is distinguishable because the communication at issue there, "No stop," incorporated the word "stop," which § 64.1200(a)(10) treats as a reasonable means *per se* to revoke consent. *Id.* at *7–8; *see also* § 64.1200(a)(10) ("Any revocation request made . . . using the words 'stop,' 'quit,' 'end,' 'revoke,' 'opt out,' 'cancel,' or 'unsubscribe' sent in reply to an incoming text message . . . constitutes a reasonable means *per se* to revoke consent."). The message alleged here is different.

Plaintiff did not send a message containing the word “stop,” “quit,” “end,” “opt out,” “cancel,” “unsubscribe,” or any other language suggesting that she wished to terminate future communications. Instead, Plaintiff allegedly responded only: “Im not a nicholas.” Am. Compl. ¶ 32. That statement identifies Plaintiff as a wrong recipient, not as someone communicating any preference about future communications. In fact, it says nothing about future communications. It does not request that Allstate stop calling, stop texting, remove her number from a calling list, revoke consent, add her number to an internal do-not-call list or otherwise cease contact. Accordingly, § 64.1200(a)(10) is not applicable, and even if considered, it does not aid the Court in determining whether Plaintiff has sufficiently alleged an internal do-not-call claim.

And while Allstate does not contend that a consumer must use any particular “magic words” to make a qualifying do-not-call request, the absence of a magic-words requirement does not relieve Plaintiff of the obligation to plausibly allege that she made a request at all. Section 64.1200(d) requires an affirmative request not to receive telemarketing calls. The statement “Im not a nicholas” does not contain any language requesting that Allstate cease calling or otherwise stop future communications.

Nor does Plaintiff’s reliance on Allstate’s automated response alter this analysis. The question under § 64.1200(d)(3) is whether Plaintiff plausibly alleges that she made the requisite request, not how an automated system subsequently categorized or responded to her message. Plaintiff alleges that she received an automated message indicating that her number had been unsubscribed from a marketing campaign. Am. Compl. ¶ 33. But that automated response cannot transform the words Plaintiff actually used into a request that they were not. The relevant communication remains Plaintiff’s statement, “Im not a nicholas,” and that statement contains no request that Allstate stop calling, stop texting, place her on a do-not-call list, or otherwise cease future communications.

Moreover, this defect is not limited to Plaintiff's allegations regarding text messages. Even if the Court were to disregard the later text messages entirely and focus only on the alleged post-request telephone calls, those calls still do not give rise to a claim because Plaintiff has not plausibly alleged that the predicate do-not-call request necessary to trigger the obligations imposed by § 64.1200(d) took place during those alleged calls.

Accordingly, even accepting Plaintiff's allegations as true and affording her the benefit of every reasonable inference, the Amended Complaint does not plausibly allege that Plaintiff made the affirmative request required by § 64.1200(d)(3). Because Plaintiff fails to allege the predicate request necessary to trigger Allstate's internal do-not-call obligations, her claim should be dismissed.

**3. Section 227(c)(5) Does Not Authorize a Private Action Based on Text Messages.**

Plaintiff contends that text messages should be treated the same as telephone calls under the TCPA's do-not-call provisions. *See* Opp. 6–14. As an initial matter, if the Court determines that Plaintiff failed to allege that she made the affirmative request required by § 64.1200(d)(3), it need not reach the question of whether § 227(c)(5) extends to text messages. Even if the Court reaches that question, Plaintiff's position is incorrect.

***a. The Plain Meaning of "Telephone Call" Does Not Include Text Messages.***

First, Plaintiff contends that the plain meaning of the word "call" includes text messages because "texting is . . . a means of communicating with someone by telephone." *See* Opp. 7 (citing *Wilson v. Medvidi Inc.*, No. 5:25-cv-03996-BLF, 2025 U.S. Dist. LEXIS 198827, at *3 (N.D. Cal. Oct. 7, 2025); *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 U.S. Dist. LEXIS 221088, at *5 (N.D. Ill. Nov. 10, 2025)).

However, a court *in this District* has already considered the same arguments Plaintiff advances here and rejected them. In *Stockdale v. Skymount Property Group, LLC*, the court

expressly disagreed with *Wilson* and *Mujahid*, explaining that those decisions relied on dictionary definitions of "call" from 2002 or later rather than the meaning of the statutory phrase "telephone call" at the time Congress enacted the TCPA in 1991. *See Stockdale,* 825 F. Supp. 3d 622, 625 n.5 (N.D. Ohio 2026).

Next, Plaintiff contends that § 227(b)'s autodialer provisions demonstrate that text messages qualify as "calls" under the TCPA and that, because "a statutory word or phrase is presumed to bear a consistent meaning throughout a statute," text messages must likewise constitute "telephone calls" under § 227(c)(5). *See* Opp. 7 (citation omitted). However, Plaintiff's consistent usage argument fails because it assumes Section 227(b) and Section 227(c)(5) employ the same statutory language. *See, e.g.*, *Steidinger v. Blackstone Med. Services*, 182 F.4th 532, 539 (7th Cir. 2026). There, the plaintiff likewise contended that "since § 227(b) applies to text messages, § 227(c)(5) must also cover texts based on the 'presumption that a given term is used to mean the same thing throughout a statute.'" *Id.* (citation omitted). The Seventh Circuit rejected this argument, explaining that "§ 227(b) and § 227(c)(5) contain different language" and that those differences "explain[] and support[]" the conclusion that "§ 227(c)(5) does not apply to text messages." *Id.*

Plaintiff's reliance on *Keating v. Peterson's Nelnet, LLC* is also misplaced. *Keating* was an unpublished Sixth Circuit decision involving text messages sent in alleged violation of 47 U.S.C. § 227(b)(1)(A)(iii), not § 227(c)(5). *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). More importantly, the Sixth Circuit's conclusion that text messages qualified as "calls" rested on *Chevron*-era deference to the FCC. *See id.* at 370–71. Following *Loper Bright* and *McLaughlin*, however, courts must independently determine the meaning of § 227(c)(5) under ordinary principles of statutory interpretation. *See Loper Bright Enterprises v.*

*Raimondo*, 603 U.S. 369, 412 (2024); *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025). Thus, *Keating* is inapposite.

Plaintiff's reliance on *Ashland Hospital Corporation v. Service Employees International Union* is likewise misplaced. *Ashland Hospital* addressed whether the defendant made any call under 47 U.S.C. § 227(b)(1)(A), not whether § 227(c)(5)'s private right of action for receiving more than one telephone call extends to text messages. It therefore does not resolve the distinct § 227(c)(5) question presented here. *See Ashland Hospital Corp. v. Serv. Emps. Int'l Union*, 708 F.3d 737, 741–45 (6th Cir. 2013).

Plaintiff also relies on FCC interpretations stating that the term "call" can encompass text messages. This is without merit. As the Seventh Circuit explained, FCC interpretations concerning the scope of the National Do-Not-Call regulations "[don't] inform our understanding of § 227(c)(5), which refers only to telephone calls." *Steidinger*, 182 F.4th at 538. The court further held that, even if the FCC had adopted a different interpretation, courts must independently determine the meaning of § 227(c)(5) under ordinary principles of statutory interpretation. *Id.*; *see also* Def.'s Mem. Supp. Mot. Dismiss at 11–12. Likewise, *Stockdale* explained that Section 64.1200(e) "says nothing as to whether the person receiving a text message from such an entity has a private right of action under Section 227(c)(5) of the TCPA for text messages." *Stockdale*, 825 F. Supp. 3d at 627 n.7.

***b. Plaintiff Conflates "Telephone Solicitations" With Telephone Calls.***

Plaintiff appears to argue that the appearance of "telephone solicitations" elsewhere in Section 227(c), particularly in 47 U.S.C. § 227(c)(3)(F), suggests that text messages must also be actionable under § 227(c)(5). *See* Opp. 8–10. However, Plaintiff's argument overlooks a distinction Congress itself made. Section 227(c)(3)(F) addresses "telephone solicitations," which Congress defined broadly to include a "telephone call or message." 47 U.S.C. § 227(a)(4). Section

227(c)(5), by contrast, does not create a private right of action for "telephone solicitations." Instead, it creates a private right of action for the receipt of more than one "telephone call" within a 12-month period. *See* § 227(c)(5). Congress's decision to use different terms in neighboring provisions must be given effect. As the Seventh Circuit explained, that difference in wording demonstrates that Congress intended § 227(c)(5) to provide a narrower remedy than the broader regulation of telephone solicitations. *See Steidinger*, 182 F.4th at 536–37.

Finally, as the Seventh Circuit observed, "Congress's general concern about intrusive telemarketing practices doesn't necessarily mean that it adopted a broad definition of telephone call." *Id.* at 539–40 (citation omitted). The Court further observed that:

> Congress specifically found that telemarketing *calls* create a public safety risk when they seize telephone lines needed for emergency or medical assistance . . . Spam *text messages* don't pose this risk, making it unsurprising, or at the very least reasonable, that § 227(c)(5)'s private right of action would cover telephone calls but not messages.

*Id.* (internal citations omitted; emphasis added). Accordingly, the Court should reject Plaintiff's attempt to equate the broader regulation of "telephone solicitations" with the narrower private right of action Congress created in § 227(c)(5).

**c. *Plaintiff Offers No Persuasive Basis to Depart from Courts Holding that Text Messages Are Not Actionable Under § 227(c)(5).***

Plaintiff attempts to dismiss *Steidinger*, *Stockdale*, and similar decisions as "out-of-circuit" authority. Opp. 10. First, *Stockdale* is not an "out-of-circuit" decision. *Stockdale* was decided by the Northern District of Ohio and squarely addressed the same issue presented here. *See Stockdale v. Skymount Prop. Group, LLC*, 825 F. Supp. 3d 622, 623 (N.D. Ohio 2026). Plaintiff offers no persuasive reason for this Court to depart from its analysis.

Moreover, Plaintiff suggests that Allstate's position (and *Steidinger*) rests on the fact that text messaging did not exist in 1991. *See* Opp. 10. It does not. *Steidinger* cautioned that "the march

of technology" alone is insufficient to determine the meaning of statutory language. *Steidinger*, 182 F.4th at 536. Although the court recognized that § 227(c)(5) is not limited to the precise forms of telephone calls that existed in 1991, it rejected the broader view that the phrase "telephone call" encompasses all communications by telephone merely because technology has evolved. *Id.* The court further explained that "[t]oo much 'liberality' will undermine the statute as surely as too literal an interpretation would." *Id.* (citation omitted).

Plaintiff's remaining criticisms merely repeat arguments addressed above. Plaintiff repeats her contention that decisions construing "call" under § 227(b) control § 227(c)(5). But, as discussed, that consistent-usage argument fails because § 227(b) and § 227(c)(5) use materially different language and create different private remedies. *See Steidinger*, 182 F.4th at 539. Congress defined "telephone solicitation" to include a "telephone call or message," but limited § 227(c)(5) to "telephone call[s]." *See* 47 U.S.C. §§ 227(a)(4), (c)(5). Those textual differences supply the reason Plaintiff claims is missing.

***d. The FCC's Interpretation Does Not Override the Statutory Text.***

Finally, Plaintiff's reliance on the FCC's interpretations is misplaced. Plaintiff concedes that neither *Loper Bright* nor *McLaughlin* requires courts to defer to the FCC's interpretation of the TCPA. Opp. 13. Yet Plaintiff ultimately asks the Court to do just that.

The proper inquiry is not whether the FCC has interpreted the TCPA to cover text messages. The proper inquiry is what Congress meant when it enacted § 227(c)(5). That is a question of statutory interpretation for the Court to decide. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires"); *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025) ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the

law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation"). Thus, even if the FCC has long interpreted the TCPA to encompass text messages, that interpretation is not controlling. The Court should therefore reject Plaintiff's invitation to substitute the FCC's interpretation for the statutory text Congress enacted.

**4. Plaintiff Does Not Address Her § 64.1200(d)(5) Theory.**

Plaintiff's Opposition does not address her § 64.1200(d)(5) theory. The Amended Complaint alleges that Allstate's response, which referenced a "campaign," demonstrated that Allstate processes opt-out requests on a per-campaign basis rather than entity-wide, in violation of § 64.1200(d)(5). Am. Compl. ¶ 66. Allstate's Motion explained that § 64.1200(d)(5) addresses only whether a qualifying do-not-call request extends beyond the calling entity to affiliated entities, and it does not regulate campaigns or campaign-specific opt-out processing. *See* Def.'s Mem. Supp. Mot. Dismiss [ECF No. 12-1] at 11. Plaintiff does not respond to this argument and does not defend her § 64.1200(d)(5) theory. Accordingly, Plaintiff has conceded that her § 64.1200(d)(5) theory fails, and it should be dismissed. *See USA Parking Sys., LLC v. E. Gateway Cmty. Coll.*, No. 4:20-CV-1967, 2022 WL 312230, at *5 (N.D. Ohio Feb. 1, 2022) ("Where a party fails to respond to an argument in a motion to dismiss 'the Court assumes he concedes this point and abandons the claim'") (citation omitted). In any event, the theory also fails on the merits because § 64.1200(d)(5) addresses whether a residential subscriber's do-not-call request applies beyond the entity making the call to affiliated entities. *See* Def.'s Mem. Supp. Mot. Dismiss at 11. The regulation does not support Plaintiff's contention that a reference to a "campaign" is a purported violation. *See* Am. Compl. ¶ 66.

**5. Further Amendment Would Be Futile.**

Plaintiff offers no response to Allstate's futility argument. Nor could she. Plaintiff has pled the full text exchange on which her claims are based, and those claims are insufficient as a matter

of law. Further amendment would therefore be futile. *See United States ex rel. Harper v. Muskingum Watershed Conservancy District*, 842 F.3d 430, 440 (6th Cir. 2016) (affirming denial of leave to amend where the proposed amended complaint failed to satisfy Rule 12(b)(6)).

**CONCLUSION**

For the foregoing reasons, including Plaintiff's failure to allege a qualifying do-not-call request or traceability, the absence of a private right of action under § 227(c)(5) for text messages, Plaintiff's abandonment of, and failure on the merits of, her § 64.1200(d)(5) theory, and the futility of further amendment, Allstate respectfully requests that the Court dismiss Plaintiff's Amended Complaint with prejudice and grant such other and further relief as the Court deems just and proper.

Dated: October 5, 2026

Respectfully submitted,

By: /s/ Eric D. Coleman

Eric D. Coleman (*Admitted pro hac vice*)
Florida Bar No. 124963
Cherly Lucien (*Admitted pro hac vice*)
Florida Bar No. 1025987
**AKERMAN LLP**
201 E. Las Olas Boulevard
Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
E-mail: eric.coleman@akerman.com
Email: cherly.lucien@akerman.com

Jeffrey Mayer
**AKERMAN LLP**
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
Telephone: (312) 634-5700
Facsimile: (312) 424-1900
Email: jeffrey.mayer@akerman.com

*Attorneys for Defendant Allstate Insurance Company*

## CERTIFICATION OF COMPLIANCE WITH PAGE LIMITS

This case is assigned to the Standard Track. Undersigned counsel hereby certifies that the Memorandum adheres to the twenty (20) page limitation permitted by Local Rule 7.1(f).

*/s/ Eric D. Coleman*
Eric D. Coleman
*Attorney for Defendant Allstate Insurance Company*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 5, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Eric D. Coleman*
Eric D. Coleman
*Attorney for Defendant Allstate Insurance Company*